Below is an Opinion of the Court.

*Trish M. Brown*
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | ) Case No. 10-38893-tmb7 |
| JOHN E. NOLAN and ANN P. NOLAN, | ) ) ) |
| Debtor. | ) |
| KENNETH S. EILER, Trustee, | ) ) Adversary Proceeding No. 11-3220-tmb |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| JOHN E. NOLAN, | ) ) |
| Defendant. | ) |

This matter came before the court on the parties' cross-motions for judgment on the pleadings. Plaintiff, the Chapter 7 Trustee ("Plaintiff"), was represented by Timothy A. Solomon. Defendant, Debtor herein ("Debtor"), was represented by Matthew A. Arbaugh.

In reaching my decision, I carefully reviewed the motions and memoranda in support thereof and opposition thereto. I also read applicable legal authorities, both as cited to me and as located through my own research. The following findings of fact and legal conclusions constitute my findings under Federal Rule of Civil Procedure (FRCP) 52(a), applicable in this proceeding under Federal Rule of Bankruptcy

MEMORANDUM OPINION-1

Procedure (FRBP) 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

## FACTS

Debtor and his wife filed a joint Chapter 7 petition on September 17, 2010. On or about September 16, 2010, a day prior to the filing, the Debtor sent funds in the form of a cashier's check via US Mail to his 401k manager, Fidelity Investment Services ("Fidelity"), to repay a secured loan which was collateralized by the funds in the 401k account. Debtor purchased the check, in the amount of $42,591.89, from Sterling Savings Bank ("Sterling) using funds from his personal account at Sterling. Fidelity received and deposited the cashier's check postpetition. On November 28, 2010, Plaintiff made written demand upon Debtor for the amount of the check, which demand Debtor refused.

Plaintiff contends that the delivery of the cashier's check to Fidelity constitutes an unauthorized post-petition transfer in violation of § 549 of the Code and seeks recovery of the funds under § 550(a). Alternatively, Plaintiff contends that the payment to Fidelity constitutes a preferential transfer in violation of § 547 of the Code. Plaintiff also seeks turnover of the funds paid to Fidelity under § 542.

Debtor denies that the funds were transferred postpetition or that the transfer constitutes an avoidable preference. In addition, he contends that Plaintiff is not entitled to turn over of the funds because they are not in his possession or control. Both parties have moved for judgment on the pleadings pursuant to FRCP 12.

## LEGAL ANALYSIS

1. Rule 12(c) Standards

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir.1990). "For purposes of [a Rule 12] motion, all of the well plead factual allegations of the complaint are assumed to be true and all the contravening allegations are deemed to be false." In re Reynolds, 189 B.R. 199, 200 (Bankr. D. Or. 1995). "In considering a motion for judgment on the pleadings, the trial court is required to view the

MEMORANDUM OPINION-2

facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Reynolds, 189 B.R. at 200 (citation omitted).

2. Claim Under § 549[1]

Section 549 allows a trustee to avoid a postpetition transfer of property of the estate that is not authorized under Title 11 or by the court. Debtor argues that the transfer at issue is not avoidable under this section for two reasons. First, he contends that he had no interest in the cashier's check at the time he filed his petition. In addition, he contends that the transfer at issue did not occur postpetition.

    a. Property of the Estate

With exceptions not relevant here, property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property interests are normally determined by state law. Butner v. U.S., 440 U.S. 48, 55 (1979). Consequently, I must determine whether, under Oregon law, Debtor had a legal or equitable interest in the cashier's check at the time the case was filed.

The transfer at issue involves a cashier's check which is a negotiable instrument governed by Article 3 of the Uniform Commercial Code (the "UCC"). Oregon has adopted the UCC and codified it at ORS 73.0101, et. seq.

Under the UCC, a check, including a cashier's check, is a "draft" defined as "order to pay a fixed amount of money." ORS 73.0104(5). In the case of an ordinary check one party, known as the drawer, directs a second party, known as the drawee, to make a payment to a third party, the payee, using the drawer's funds.

In the case of a cashier's check, one party, the purchaser, pays the bank to issue an order directing the bank, or one of its branches, to make a payment to the payee using the banks funds. Accordingly, in the case of a cashier's check, the bank is both the drawer and drawee. The payee may be the purchaser or a third party. If the purchaser is a third party, as in this case, the purchaser is known as a remitter.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

MEMORANDUM OPINION-3

At the time of the purchase of a cashier's check the purchaser transfers his rights in the funds used to purchase the check to the issuing bank. The Trustee contends that a purchaser acquires a ownership interest in a cashier's check at the time of purchase and retains that interest until delivery of the check to the payee, a contention Defendant disputes.

In <u>Hall-Mark Electronics Corp. v. Sims (In re Lee)</u>, 179 B.R. 149, 159 (9th Cir. BAP 1995), the Bankruptcy Appellate Panel held that a purchaser of a cashier's check acquires property rights in it and retains that interest until delivery of the check to the payee. In <u>Lee</u>, the debtor purchased a cashier's check for $100,000 payable to Hall-Mark, one of his suppliers. Debtor purchased the check more than 90 days prior to the petition date, but the supplier did not receive it until the 90th day before the filing. The trustee sought to avoid the transfer as a preference. The supplier argued, as Debtor does here, that the debtor had no property right in the check, contending that "it is axiomatic that the cashier's check, while possessed by the Debtors, constituted funds of the issuing bank." <u>Id.</u> at 158. Accordingly, it argues, the delivery of the cashier's check did not constitute a transfer of an interest of the debtor in property and was, thus, not subject to avoidance under § 547(b)(1).

The BAP disagreed, noting that "Hall–Mark incorrectly focuses on the ownership of the literal funds used to pay the cashier's check rather than the ownership of the cashier's check which represents an order to pay from the bank's funds. In this sense, the cashier's check, like an ordinary check, is utilized as a means of transferring the purchaser's cash to the check's payee. The issuing bank is not a transferee, it is simply a conduit." <u>Id.</u> at 159 (citations omitted). The BAP also rejected Hall-Mark's contention that the debtor had no property interest in the check itself, noting that "[i]t is well-established in California law that the purchaser of a cashier's check retains a property interest in the cashier's check before it is delivered[,]" <u>Id.</u> (citations omitted) including the right to return the check and cancel it. <u>Id.</u> at 161. See also <u>Mora v. Vasquez et.al (In re Mora)</u>, 199 F.3d 1024 (9th Cir. 1999) (purchaser retained interest in cashier's check until it was received by the payee).

MEMORANDUM OPINION-4

Debtor argues that Lee and Mora were effectively overruled by the 9th Circuit's decision in Abele v. Modern Financial Plans Services, Inc. (In re Cohen), 300 F.3d 1097 (9th Cir. 2002) and are, therefore, no longer good law.

In Cohen, the debtor, while insolvent, purchased a cashier's check listing her husband as the purchaser. The payee of the check was Modern Financial Plans Services, Inc. ("Modern"). Debtor gave the check to her husband who delivered it to Modern. Debtor filed a chapter 7 bankruptcy petition within a year of the date of the delivery of the check to Modern. Thereafter, the trustee of her estate filed an adversary against Modern contending that the transfer was fraudulent under § 547 and seeking recovery of the funds evidenced by the check under § 550. The parties conceded that a fraudulent transfer occurred within the meaning of § 548. However, Modern argued that the trustee was not entitled to recover from it because it was not the initial transferee of the cashier's check and took the check in good faith without knowledge of its avoidability.

The distinction between an initial and immediate or mediate transferee of a fraudulent transfer is significant for purposes of recovery of a fraudulent transfer under § 550. This section allows a trustee to recover such transfer from "(a) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transfer." However, whereas a trustee's right to recover against an initial transferee is absolute, "the trustee may only recover if the subsequent transferee did not accept the transfer for value, in good faith, and without knowledge of the transfer's voidability." Id. at 1102. Accordingly, resolution of the issue in Cohen turned on whether Modern was an initial transferee.

Modern argued that either the debtor or her husband were the initial transferees of the check. The bankruptcy court disagreed and entered judgment for the trustee. Modern appealed to the Bankruptcy Appellate Panel which reversed, finding that Modern was not the initial transferee, and remanded the case to the bankruptcy court for a determination as to Modern's good faith. On remand, the bankruptcy court held that Modern had acted in good faith. The trustee appealed that determination to the district court which affirmed the bankruptcy court's decision. The trustee then appealed to the Ninth Circuit court of appeals,

MEMORANDUM OPINION-5

again arguing that Modern was the initial transferee of the cashier's check and, therefore, not entitled to raise any good faith defense.

On appeal, the Circuit Court focused its attention on the definition of the term transferee, noting:

> "[i]t is generally accepted that a transferee is one who, at a minimum, has 'dominion over the money or other asset, the right to put the money to one's own purposes.' In practical terms, the 'dominion test' requires that a transferee be 'free to invest the whole [amount] in lottery tickets or uranium stocks.'" Id. at 1102 (citations omitted).

The Court then looked to state law, specifically Arizona's verison of the UCC, to determine whether debtor or her husband had the rights to dominion or control over the cashier's check, i.e. the right to enforce the check.

With respect to the debtor's right in the cashier's check the court found that debtor, as the actual purchaser of the cashier's check was the remitter of the instrument. However, it concluded, based on its review of the UCC, that debtor, as remitter, had no right to enforce the cashier's check and was, therefore, not a transferee, but merely a nonholder in possession of the check.

The court then addressed the husband's status with respect to the check. It concluded that he, like the debtor, was not the holder of the cashier's check because he was not the payee and could not, therefore, enforce the check as payee. The court acknowledged that delivery of the check to debtor's husband could have constituted negotiation of the check, giving him the right to enforce it, if it was given to him for the purpose of allowing him to do so. However, it concluded that "[n]evertheless [he] could only inherit from [debtor] the rights she possessed. Since [she] was not a holder and had no right to enforce the instrument, [her husband] could not have acquired such rights from her." Id. at 1106-07.

Having concluded that neither debtor nor her husband were transferees, the court looked to the rights of Modern, the final party to the transaction, noting that Modern "[a]s the holder of the instrument . . . was entitled to enforce [it and was, therefore] the first entity to exercise dominion over the instrument." Id. at 1107.

Debtor contends that Cohen stands for the proposition that a purchaser of a cashier's check has no interest in it. The opinion does, in fact, contain language that appears to support that proposition.

MEMORANDUM OPINION-6

Specifically, the court, in transitioning from its discussion of debtor's rights in the cashier's check to its discussion of her husband's rights in it stated "[h]aving concluded that Cynthia did not have any legal interest in the cashier's check, we consider [her husband's] interests." Id. at 1106. There are, however, several problems with Debtor's reliance on this language.

First, the issue in Cohen was not whether debtor had an interest in the cashier's check, but whether she was a transferee under § 550. Accordingly, the statement regarding her ownership interest in the cashier's check is dicta. Further, the court's decision was based on its interpretation of the UCC, as adopted by the state of Arizona. However, as recognized by the Official Comment to the UCC - "[t]he right to enforce an instrument and ownership of the instrument are two different concepts . . . . Ownership rights in instruments may be determined by principles of the law of property, independent of Article 3, which do not depend upon whether the instrument was transferred under Section 3-203. Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument." O.R.S. 73.023. Accordingly, the mere fact that the court found that debtor lacked the right to enforce the cashier's check did not support its statement that she had no legal rights in it.

Finally, and most importantly the statement that debtor had no "legal interest" in the cashier's check is inconsistent with the ultimate holding of the case, that is, the trustee was entitled to a judgment against Modern. That ruling necessitated a finding that the debtor had an interest in the cashier's check and it was, therefore, estate property. Thus, contrary to Debtor's assertions, Cohen actually supports the trustee's position that Debtor had an interest in the cashier's check after its purchase.

      b. Timing of Transfer

Debtor denies that the transfer at issue occurred postpetition. He is incorrect. A purchaser transfers a cashier's check when he delivers it for the purpose of giving the recipient the right to enforce it. ORS 73.0203(1). Delivery does not take place until the payee physically has possession of the cashier's check. Mora 199 F.3d at 1027-28. Merely dropping the check in the mail does not constitute "delivery." Id. at 1028. Fidelity did not receive the cashier's check until after the Debtor had filed his bankruptcy petition. The

MEMORANDUM OPINION-7

transfer of the cashier's check therefore occurred postpetition and was not authorized by the Code or the court. I will, therefore, grant Plaintiff's Motion for Judgment on the Pleadings as to his § 549 claim.

3. Claim Under § 550

To the extent a transfer is avoided under § 549, § 550(a) allows recovery of the property transferred or the property's value from the "the initial transferee of such transfer" or from the "entity for whose benefit such transfer was made." The payment at issue in this case was made to Fidelity for deposit to Debtor's retirement account. The payment was thus made for his benefit and may be recovered from Debtor and Plaintiff is entitled to recover the amount of the transfer from Debtor.

4. Claims under § § 547 and 542

Plaintiff argued, alternatively, that the transfer of the cashier's check constituted a preferential transfer that is avoidable under § 547 or that the funds were subject to turnover under § 542. In light of my ruling on Plaintiff's § 549 claim I need not address these issues.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings will be granted on his § 549 Claim and Debtor's cross-motion denied. Plaintiff is entitled to judgment under § 549(a) avoiding the cashier check's transfer and granting a monetary award under § 550(a) against Debtor for $42,591.89 plus prejudgment interest from November 28, 2010, at the federal rate. Plaintiff's alternative claims under § 547 and § 542 are moot. Plaintiff's counsel should submit the appropriate order and a separate judgment within 10 days of this Opinion's entry.

###

cc: Timothy A. Solomon
Matthew A. Arbaugh